UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KERI-LYNN CHERY, | Dkt. No: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| SHREE HARIKRUSHAN PHYSICAL THERAPY, P.C. d/b/a SHK PHYSICAL THERAPY AND REHABILITATION SERVICES and CHANDRASHEKHAR ARDESANA, Individually, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Keri-Lynn Chery ("Ms. Chery" or "Plaintiff"), by and through her attorneys Joseph & Norinsberg, LLC, hereby files the within Complaint against Defendants Shree Harikrushan Physical Therapy, P.C. d/b/a SHK Physical Therapy and Rehabilitation Services ("SHK") and Chandrashekhar Ardesana ("Ardesana"), Individually, (collectively, "Defendants"), alleges upon knowledge as to her own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this civil action based upon Defendants' violation of: (i) the Equal Benefit Clause of 42 U.S.C. § 1981 ("Section 1981"); (ii) the anti-discrimination provisions of the New York State Human Rights Law ("NYSHRL") Exec. L. § 296 *et. seq.*, (iii) the anti-retaliation provisions of the NYSHRL.; and (iv) any other causes of action that can be inferred from the facts set forth herein.

**PRELIMINARY STATEMENT**

2. Defendant SHK operates two physical therapy medical clinics in Rockland County which are owned and managed by Defendant Ardesana. Plaintiff Ms. Chery, a Black woman, served as a rehabilitation aide for approximately one-and-a-half years under the employment of Defendants.

3. Regrettably, during her tenure, Defendants engaged in persistent racial discrimination against Ms. Chery, fostering a toxic and unwelcoming work environment. Specifically, Ardesana openly demonstrated disdain towards Black individuals, frequently directing derogatory comments at Ms. Chery.

4. Furthermore, Ardesana's discriminatory behavior escalated to the point of openly and repeatedly calling Ms. Chery a "**N\*\*\*er**."

5. Following Ms. Chery's explicit objection to this vile and offensive language, Ardesana launched a series of retaliatory actions against her, ultimately forcing her to resign from her position.

6. Accordingly, Plaintiff brings this action to remedy Defendants' violations of the above-mentioned laws protecting the rights of employees in the workplace.

**JURISDICTION AND VENUE**

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 1981.

8. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(ii), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(i), as Defendant resides within this judicial district.

## DEMAND FOR JURY TRIAL

10. Plaintiff respectfully demands a trial by jury on each Count of this Complaint.

## PARTIES

11. Plaintiff is an individual who at all times relevant to this Complaint, is and has been domiciled in Sloatsburg Village located in the County of Rockland, and State of New York.

12. At all relevant times herein, Plaintiff was an "employee" of Defendants within the meaning of Section 1981 and the NYSHRL.

13. Defendant SHK is a domestic professional service corporation, with its principal physical therapy office located at 60 N. Madison Avenue, in Spring Valley Village located in the County of Rockland, and State of New York.

14. Defendant SHK operated two physical therapy clinics in Rockland County, New York. In addition to its principal office, SHK operated a physical therapy office located at 873 NY-45, Suite 102, in New City located in the County of Rockland, and State of New York.

15. Defendant Ardesana is the president of Defendant SHK and actively participated in the day-to-day operations of SHK. Specifically, Ardesana directly supervised Plaintiff.

16. At all relevant times herein, Defendants employed Plaintiff to work as a rehabilitation aide in their New City clinic.

17. Specifically, Plaintiff's paystubs indicate that Defendant SHK issued compensation to Plaintiff.

18. At all times hereinafter mentioned, Defendants exercised control over the terms and conditions of Plaintiff's employment, in that Defendants had the power to: (i) hire and fired employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiff herein; and (v) otherwise affect the quality of the employees' work conditions and employment. Accordingly, each Defendant was an the "employer" of Plaintiff within the meaning of Section 1981 and the NYSHRL.

## FACTUAL ALLEGATIONS

*Ms. Chery's Employment with Defendants*

19. Defendants employed Ms. Chery as a rehabilitation aide in their New City physical therapy clinic since September of 2022.

20. Ms. Chery's role as a rehabilitation aide involved various responsibilities, including preparing patients for treatments, maintaining treatment rooms and equipment, caring for therapy equipment, conducting nonclinical patient care tasks, updating records, handling calls, scheduling appointments, explaining treatment plans and insurance details to patients, and managing the front desk.

*Ms. Chery is Subjected to a Hostile Work Environment Based Upon Her Race*

21. Throughout her employment, Ardesana, openly demonstrated a negative bias against Black individuals in his interactions with Ms. Chery.

22. Specifically, Ardesana consistently conveyed discriminatory opinions about Black people within the workplace.

23. On numerous occasions, Ardesana directed derogatory comments towards Ms. Chery, portraying Black individuals as "loud," "ghetto," and "violent."

24. Despite Ms. Chery's objections, Ardesana chose to disregard her concerns by belittling them.

25. Moreover, Ardesana occasionally tried to offer compliments to Ms. Chery by positioning her as an exception to negative stereotypes, which only made matters worse.

26. Specifically, Ardesana commended Ms. Chery's dedication and work ethic, contrasting them with his prejudiced perceptions of Black individuals. However, Ardesana's patronizing comments rightfully compounded Ms. Chery's frustrations because they were rooted in the racist view that her having an exemplary worth ethic made her an outlier or some exception with regard to Black people as a whole.

27. Worse, Ardesana would visibly display dissatisfaction in response to her objections to his highly offensive compliments, abruptly distancing himself and outrageously accusing her of ingratitude.

28. On June 9, 2023, Ardesana uttered a racial slur towards Ms. Chery while they were at work.

29. Specifically, Ardesana openly referred to Ms. Chery as a "**N\*\*\*er**." Ms. Chery vehemently objected to this discriminatory language, making it clear that the remark was not only unacceptable but deeply hurtful.

30. Despite Ms. Chery's objection, Ardesana responded by loudly retorting, "**What N\*\*\*er**," "**so what N\*\*\*er**" and "**N\*\*\*er**." Shocked and appalled by his words, Ms. Chery promptly left the clinic.

31. Ardesana then took it a step further by pursuing Ms. Chery outside the clinic and shouting, "**I'm going to call your husband and tell him to come get his N\*\*\*er wife**."

32. Subsequent to this distressing incident, Ms. Chery addressed Ardesana through a text message, firmly stating, "Never use the N-word with me again," and conveying her shock and disappointment at being subjected to such a derogatory reference by her superior.

33. In response to her message, Ardesana merely replied with a 'like' emoji, implicitly acknowledging that he had made the N-word remark, and indicating a complete and utter lack of remorse for his offensive behavior. *See* **Ex. A** (Text message exchange between Ms. Chery and Ardesana).

***Defendants' Unlawful Retaliation and Constructive Discharge***

34. After Ms. Chery rightfully objected to Ardesana's racist behavior he doubled down and began illegally retaliating against Ms. Chery.

35. Specifically, Ardesana marginalized Ms. Chery by purposefully excluding her from meetings and closely monitoring her work performance, which resulted in multiple verbal warnings.

36. In February 2024, Ms. Chery took medical leave, with plans to return in April 2024.

37. On April 1, 2024, Ms. Chery submitted her resignation to Defendants, attributing her departure to the detrimental impact of Ardesana's racist remarks and the failure of Defendants to implement effective remedial actions to safeguard her mental well-being.

38. In response to Ms. Chery's resignation, Ardesana simply requested the return of her keys, once again demonstrating a lack of acknowledgment or remorse for his offensive behavior. *See* **Ex. B**: Ms. Chery's resignation and Ardesana's response.

39. It is evident that Ms. Chery felt compelled to resign from her position in order to escape the ongoing discrimination and retaliation orchestrated by Ardesana, which effectively led to her constructive discharge by Defendants.

*Ms. Chery has been Irreparably Harmed as a Result of Defendants' Conduct*

40. The impact of Defendants' deplorable actions have inflicted profound and enduring harm upon Ms. Chery, manifesting in severe emotional anguish and psychological turmoil.

41. The distressing experiences of being subjected to repeated acts of racial discrimination from her supervisor Ardesana have contributed to a profound sense of humiliation, anger, and sadness within Ms. Chery. These distressing circumstances have precipitated a cascade of debilitating mental health challenges, including depression, anxiety, and noticeable weight loss.

42. Ms. Chery has sought solace in the care of mental health professionals and a psychiatrist, who have diagnosed her with severe emotional stress and marked functional impairment.

43. To address the debilitating symptoms of anxiety and depression, Ms. Chery has been prescribed antidepressant medication.

## FIRST CAUSE OF ACTION AGAINST DEFENDANTS
*(Race Discrimination in Violation of Section 1981)*

44. Plaintiff hereby repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

45. 42 U.S.C. § 1981 prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race.

46. Defendants discriminated against Plaintiff by regularly subjecting her to offensive racial remarks resulting in a hostile work environment in violation of Section 1981.

47. As detailed above, Defendant SHK's President Ardesana consistently conveyed discriminatory opinions about Black people within the workplace and occasionally tried to offer compliments to Ms. Chery by positioning her as an exception to negative stereotypes.

48. Moreover, Defendant Ardesana unapologetically used the "N-word" to refer to Plaintiff.

49. Based on the foregoing, Defendants created an insufferable and hostile work environment that ultimately resulted in Plaintiff's constructive discharge

50. As a direct and proximate result of Defendants' discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

51. Defendants' unlawful discrimination against the Plaintiff constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
*(Retaliation in Violation of Section 1981)*

52. Plaintiff hereby repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

53. 42 U.S.C. § 1981 prohibits punishment of an employee by an employer for engaging in legally protected activity, such as making a complaint of harassment. Retaliation can include any negative job action, such as demotion, discipline, firing, salary reduction, or job or shift reassignment.

54. As detailed above, Defendants retaliated against Plaintiff in violation of Section 1981 when Ms. Chery, in good faith, voiced her opposition to Defendant SHK's President

Defendant Ardesana's unlawful discriminatory conduct. Defendants subjected Plaintiff to retaliation for engaging in protected activity by closely scrutinizing her work, rushing her work, and regularly issuing her verbal disciplinary warnings, resulting in Plaintiff's constrictive discharge.

55. As a direct and proximate result of Defendants' retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

56. Defendants' unlawful retaliation against the Plaintiff constitutes a willful and wanton violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS
*(Discrimination Based on Race under the NYSHRL)*

57. Plaintiff hereby repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

58. The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race.

59. Defendants discriminated against Plaintiff by regularly subjecting her to offensive racial remarks resulting in a hostile work environment in violation of the NYSHRL.

60. As detailed above, Defendant SHK's President Ardesana consistently conveyed discriminatory opinions about Black people within the workplace and occasionally tried to offer compliments to Ms. Chery by positioning her as an exception to negative stereotypes.

61. Moreover, Defendant Ardesana unapologetically used the "N-word" to refer to Plaintiff.

62. Based on the foregoing, Defendants created an insufferable and hostile work environment that ultimately resulted in Plaintiff's constructive discharge

63. As a direct and proximate result of Defendants' discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

64. Defendants' unlawful discrimination against the Plaintiff constitutes a willful and wanton violation of the NYSHRL, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANTS**
*(Unlawful Retaliation under the NYSHRL)*

65. Plaintiff hereby repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

66. The NYSHRL prohibits retaliation by any person against any individual who in good faith complains about discriminatory practices to which he or she has been subjected.

67. As detailed above, Defendants retaliated against Plaintiff in violation of the NYSHRL when Ms. Chery, in good faith, voiced her opposition to Defendant SHK's President Defendant Ardesana's unlawful discriminatory conduct. Defendants subjected Plaintiff to retaliation for engaging in protected activity by closely scrutinizing her work, rushing her work, and regularly issuing her verval disciplinary warnings resulting in Plaintiff's constrictive discharge.

68. As a direct and proximate result of Defendants' retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

69. Defendants' unlawful retaliation against the Plaintiff constitutes a willful and wanton violation of the NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

b. A judgment declaring that the practices complained of herein are unlawful and in violation of the laws of the United States and New York;

c. An order restraining Defendants from any retaliation against Plaintiff in any form for her participation in this litigation;

d. An award for all monetary damages which Plaintiff has sustained as a result of the Defendants' conduct, including back pay, front pay, general and special damages for lost compensation and employee benefits that she would have received but for Defendants' conduct, and for out-of-pocket losses that Plaintiff has incurred due to the Defendants' conduct;

e. An award for all non-monetary and/or compensatory damages, including but not limited to, compensation for severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

f. An award of damages in an amount to be determined at trial to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

g. Punitive damages to the extent authorized by law in an amount commensurate with Defendants' ability and to deter future unlawful conduct;

h. Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

i. Pre-judgment and post-judgment interest, as provided by law; and

j. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Date: New York, New York
November 14, 2024

                                            Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: _____
Jon. L. Norinsberg, Esq.
Diego O. Barros, Esq.
110 East 59th Street, Suite 2300
New York, New York 10022
Tel.: (347) 273-7327
Fax: (212) 656-1889
E-mails: jon@norinsberglaw.com and
        diego@norinsberglaw.com
*Attorneys for Plaintiff*